# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| CRISTINA REYES,<br>    Plaintiff,<br>vs.<br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY,<br>    Defendant. | Case No. 2:11-cv-00456-PMP-CWH<br>**REPORT AND RECOMMENDATION**<br>(Mtn for Reversal - #11)<br>(Cross Mtn for SJ - #12) |

This matter was referred to the undersigned Magistrate Judge on Plaintiff's Motion for Reversal and/or Remand (#11), filed August 22, 2011, and Defendant's Cross-Motion for Summary Judgment and Memorandum in Support thereof and in Opposition to Plaintiff's Motion for Reversal of the Commissioner's Decision (#12), filed September 21, 2011. Plaintiff did not file a response to Defendant's Cross-Motion, and therefore is deemed to have acceded to the accuracy of the summaries supplied by Defendant. *See* Order (#9).

This case involves judicial review of administrative action by the Commissioner of Social Security denying Plaintiff Cristina Reyes' claim for disability benefits under Title II of the Social Security Act. For the reasons set forth below, and pursuant to the provision of 28 U.S.C. §§ 636(b)(1)(B) and (C), the undersigned recommends that Plaintiff's Motion for Reversal and/or Remand (#11) be denied and Defendant's Cross-Motion for Summary Judgment (#12) be granted.

**BACKGROUND**

**I.    Procedural History.**

On February 7, 2007, Plaintiff filed an application for Social Security Disability Insurance Benefits alleging she became disabled on April 1, 2006. (AR 147-149). Her claim was denied initially and on reconsideration. (AR 73-76, 80-85). On May 4, 2009, Plaintiff appeared with counsel and testified before an Administrative Law Judge ("ALJ") (AR 21-70). In a decision dated June 3, 2009, the ALJ analyzed the record and found that Plaintiff had the residual functional capacity (RFC) to perform a significant number of jobs in the national economy (AR 13-20). The ALJ's decision became the final

decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. (AR 1-3). On March 25, 2011, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). *See* Compl. (#1).

**II.     The Administrative Law Judge's Decision**

The parties agree that the ALJ fairly and accurately summarized the medical and non-medical evidence of record. Using the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920, the ALJ issued a decision denying the claim for benefits on June 3, 2009. (AR 7-20). The ALJ found that Plaintiff had not engaged in substantial gainful activity since October 1, 2006, the amended disability onset date. (AR 15, ¶ 2). The ALJ determined that Plaintiff suffered from the severe impairments of back and neck pain secondary to cervical and lumbar disc disease; a history of carpal tunnel syndrome; a history of endometriosis; and status post surgery for interstitial cystitis with good results in March 2007. (AR 15, ¶ 3). The ALJ compared the findings of the medically determinable severe impairments and found that Plaintiff did not meet or equal any "listed" impairments sufficient for a presumption of inability to engage in any gainful activity. (AR 16, ¶ 4 citing 20 C.F.R. Part 404, Subpart P, Appendix 1). The ALJ assessed Plaintiff as retaining the residual functional capacity (RFC) to perform less than the full range of light work as follows: lift/carry twenty pounds occasionally, ten pounds frequently, sit/stand/walk six hours in an eight-hour workday with appropriate breaks, no climbing ladders or working around unprotected heights; no continuous bending or lifting; occasional kneeling and crawling; needs to avoid extreme cold; is precluded from industrial vibration; needs inside activity; and no repetitive activity of the upper extremities at or above shoulder level. (AR 16, ¶ 5). The ALJ found that Plaintiff was unable to perform her past relevant work as a banquet waitress. (AR 18, ¶ 6). Relying on the expert testimony, the ALJ found that Plaintiff would be unable to perform her past relevant work with the limitation of no repetitive activity of the upper extremities at or above shoulder level. *Id*.

The ALJ classified Plaintiff as a younger individual age 18-49 on the date disability is alleged. (AR 19, ¶ 7). The ALJ noted that Plaintiff is illiterate but able to communicate in English. (AR 19, ¶ 8). The ALJ concluded that transferability of skills did not rise to a pertinent issue. (AR 19, ¶ 9). The ALJ considered Plaintiff's age, education, work experience, and residual functional capacity and determined that Plaintiff could perform other work in the national economy consisting of inserting

machine operator and/or a collator operator. (AR 19-20, ¶ 10). The ALJ decided that Plaintiff did not suffer from a disability between the date of application and the date of decision. (AR 20, ¶ 11).

### III. Judicial Review of Disability Determination

District courts review administrative decisions in social security benefits cases under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). The statute provides, in relevant part, that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." 42 U.S.C. § 405(g).

The District Court may enter, "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405 (g). The Ninth Circuit reviews a decision of a District Court affirming, modifying or reversing a decision of the Commissioner *de novo*. *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2003).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). The Commissioner's findings may be set aside if they are based on legal error or are not supported by substantial evidence. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen*, 80 F.3d at 1279 (holding that courts must weigh both the evidence that supports and the evidence that detracts from the Commissioner's conclusion). Under the substantial evidence test, the Commissioner's findings must be upheld if supported by inferences reasonably drawn from the record. *Batson,* 359 F.3d at 1193. When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *Id*. If the evidence can

reasonably support either affirming or reversing the ALJ's decision, the court may not substitute its judgment for the ALJ's judgment. *Flaten v. Sec'y of Health and Human Serv.,* 44 F.3d 1453, 1457 (9th Cir. 1995).

### IV.     Disability Evaluation Process

To qualify for disability benefits under the Social Security Act, a claimant must show that:

(a)   he suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less that twelve months; and

(b)   the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *see also* 42 U.S.C. § 423(d)(2)(A). The claimant has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995), *cert. denied*, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). If a claimant establishes an inability to perform his prior work, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful work that exists in the national economy. *Batson*, 157 F.3d at 721. A Five-Step Sequential Evaluation process shall be followed by the ALJ in a disability case. *See* 20 C.F.R. § 416.920; *see also Mendoza v. Apfel*, 88 F. Supp. 2d 1108, 1111 (C.D. Cal. 2000). The first step requires the ALJ to determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If the claimant is currently engaged in substantial gainful activity, a finding of non-disabled is made, and the claim is denied. The second step requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments that significantly limit him or her from performing basic work activities. 20 C.F.R. § 416.920(c)). If the ALJ determines that the claimant has no such impairment, a finding of non-disabled is made, and the claim is denied. The third step requires the ALJ to compare the claimant's impairment(s) with those impairments in the Listing of Impairments ("Listing") located at 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 416.920(d). If the impairment(s) meets or equals an impairment in the Listing, disability is conclusively presumed, and benefits are awarded.

If the impairment(s) does not meet or equal an impairment in the Listing, step four requires the ALJ to determine whether the claimant has sufficient residual function capacity ("RFC") despite his impairment(s), to perform his past work. *See* 20 C.F.R. § 416.920(e). RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities. Social Security Administration, *Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p, 1996 SSR LEXIS 5, *8. If the claimant is still capable of performing his past work, a finding of non-disabled is made, and the claim is denied. The claimant has the burden of proving that he cannot perform his past work. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). If the claimant cannot perform his past work, a *prima facie* case of disability is established, and step five shifts the burden to the Commissioner to prove that the claimant, based on his age, education, work experience, and RFC, can perform other substantial gainful work that exists in significant numbers in the national economy. 20 C.F.R. § 416.920(f). If the ALJ finds that any one of the five steps establishes that the claimant is not disabled, no further evaluation is required. *See* 20 C.F.R. § 404.1520(a).

**V.     Plaintiff's Motion for Reversal or Remand**

Plaintiff makes two arguments. She claims that the ALJ committed reversible error at Step Five of the sequential analysis by identifying occupations which Plaintiff does not have the residual functional capacity to perform, and she claims that her illiteracy precludes her from performing the occupations which were identified.

**A. Step Five Analysis regarding Repetitive Activity**.

Plaintiff's first argument is that her RFC limitation against "repetitive" activity should apply to occupations which require "frequent" activity. Plaintiff's position is as follows: the ALJ found, as part of the RFC, a limitation that would preclude "repetitive activity of the upper extremities at or above shoulder level." (AR 16). Plaintiff then points out that banquet waitress work requires "frequent" use of upper extremities at or above shoulder level, *id*, and "frequent is defined as existing more than 1/3 of the workday up to 2/3 of the work day." *See* Social Security Ruling 83-10 and the DOT No. 311.477-026.2. Therefore, any alternative work activity which requires frequent "extending use of the upper extremities at or above shoulder level" should also be precluded. Finally, because both of the cited alternative work activities of inserting machine operator and/or a collator operator which were identified

5

by the vocational expert require the "frequent use of upper extremities at or above the shoulder level," the ALJ was required to justify that apparent inconsistency. *See* Social Security Ruling 00-4p (requiring explanation of deviation from DOT and vocational expert's opinion). Plaintiff's position is that he failed to do so, and thereby committed reversible error.

At the outset, it is noted that Plaintiff does not contest the ALJ's RFC determination, nor does she argue that the ALJ should have found a restriction against "frequent" upper extremity activity in his RFC, and thus that determination is not at issue.[1] During the hearing, the ALJ consulted with a vocational expert (VE) to determine that the restriction against this "frequent" upper extremity activity at a heavy level precluded Plaintiff from performing her past work, but did not preclude her from performing the duties of a collator operator or an inserting machine operator. (AR 60-61). "When considering whether a claimant can perform her past work, an ALJ may "use the services of vocational experts or vocational specialists … to obtain evidence [to] determine whether [the claimant] can do [her] past relevant work. *See* 20 C.F.R. § 404.1560(b)(2); *see also Matthews v. Shalala,* 10 F.3d 678, 681 (9th Cir. 1993) (although not required, vocational expert testimony is useful in determining whether a claimant can perform past work).[2]

Here, the ALJ asked the VE whether Plaintiff would be able to perform her past work as a waitress if she had "[n]o continuous or repetitive activity of the upper extremities" (AR 62). The VE testified that given this limitation, while "she could perform just about a full line of grades of light [work, s]he couldn't perform her past work" (AR 62). The ALJ then asked the VE to identify a few specific jobs that Plaintiff could perform (AR 63). The VE testified that with a repetitive upper extremity restriction, Plaintiff could be an inserting machine operator or collator operator (AR 63). As the ALJ's hypotheticals matched his RFC finding that Plaintiff was restricted from repetitive activity of the upper extremities, the VE's testimony was relevant to Plaintiff's ability to work. *See Rollins v. Massanari*, 261 F.3d 853,

---

[1] *See Bray v.Comm'r of SSA*, 554 F.3d 1219, 1226, n.7 (9th Cir. 2009) (finding claimant waived argument because the argument was not made in claimant's opening brief).

[2] "[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work." *See* 20 C.F.R. § 404.1560(b)(2).

857 (9th Cir. 2001)(hypothetical question must accurately reflect the claimant's RFC). Thus, the ALJ appropriately relied on the testimony to find that while Plaintiff could not be a banquet waitress, there was other significant work in the national economy Plaintiff could perform even with a restriction against repetitive upper extremity activity (AR 18-20). *See Bayliss*, 427 F.3d 1211, 1218 (9th Cir. 2005)("A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required").   The ALJ noted that the VE testified that "none of these jobs would require repetitive use of the upper extremities at or above shoulder level" and indicated, "I accept the testimony of the vocational expert, and so find." (AR 19).

Plaintiff's argument confuses a "repetitive" activity restriction with a limitation that Plaintiff cannot "frequently" perform a certain activity. These two restrictions are not the same. Repetitive activity is an ability to do the same activity, repeatedly, without breaks.  Frequent performance of an activity relates to being able to do an activity at least one-third and up to two-thirds of the day (DOT # 208.685-010, 208.685-018, 311.477-026). A restriction against "repetitive" activity does not refer to the percentage a person can perform an activity throughout the day.  Where it is unclear whether a claimant's limitation would prevent that claimant from performing a certain job, the regulations allow an ALJ to consult a vocational expert. *See* 20 C.F.R. §§ 404.1560(b)(2), 404.1566(e).  The VE's testimony was thus appropriate to assist the ALJ in his determination of whether  Plaintiff could meet the demands of a job given the repetitive upper extremity restriction.

The ALJ's uncontested RFC found a restriction against repetitive, not frequent, upper extremity activity. The ALJ properly recited that restriction to the VE in his hypothetical. The VE found that this restriction precluded Plaintiff from being a waitress but did not preclude her from "just about a full line of grades of light" work, including work as a collator operator or an inserting-machine operator (AR 62). The fact that all three of these jobs require frequent reaching and handling is inconsequential because Plaintiff's RFC does not preclude frequent reaching and handling (AR 16).

**B. Analysis regarding Plaintiff's Illiteracy.**

The ALJ found that Plaintiff is illiterate, but is able to communicate in English.  (AR 19, ¶ 8). Plaintiff's position is that her illiteracy precludes her from working in the identified occupations because they require literacy abilities beyond what the ALJ found she possesses.  Plaintiff asserts that a review

7

of the identified alternative occupations reveals that a person who does not read or write in English cannot perform the occupations. The occupation of inserting machine operator requires a general educational development at Language Level 2; collator operator requires Language Level 1. *See* DOT 208.685-010 and 208.685-018 ( #11-1). Plaintiff therefore argues that the identified alternative occupations require the language ability to read and write in English and are therefore unavailable to Plaintiff, and this conflict was not explored by the ALJ to obtain a sufficient explanation to allow for a deviation from the DOT.

"A claimant is not per se disabled if he or she is illiterate." *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001). When an ALJ finds that an illiterate claimant can perform a job listed in the DOT, the ALJ merely needs to provide an explanation why Plaintiff can do the job despite her illiteracy. *Id*. The record contains ample evidence that Plaintiff understands English and that she "speaks quite well" (AR 61), and has performed her past work as a semi-skilled formal waitress, a job requiring a literacy language level of 2 (DOT #311.477-026, #11-1). Although she appeared at the hearing with a translator, she testified in English. Moreover, Plaintiff's Function Report, apparently completed in her own handwriting, indicates that she believes that she follows written instructions "very well," and follows spoken instructions "very well." (AR 187). The VE was present when Plaintiff confirmed her ability to understand English and that she was a high school graduate literate in Spanish, (AR 25, 30), and was aware that her past work experience was as a semi-skilled formal waitress. When an ALJ finds a claimant is unable to perform her past work, an ALJ may use a vocational expert "in determining whether . . . [the claimant's] work skills can be used in other work and the specific occupations in which they can be used." *See* 20 C.F.R. § 404.1566(e); *Bayliss*, 427 F.3d at 1218 ("An ALJ may take administrative notice of any reliable job information, including information provided by a VE").

In arriving at his decision that Plaintiff was able to work as a collator operator and an inserting-machine operator, the ALJ relied upon the testimony of the VE who was given this hypothetical: "A hypothetical person, then, younger individual approximately 48 years of age, and illiterate in the English language, if you will. Not able to read or write in the English language. Speaks quite well, but that's not the standard, and with the limitations from the assessment of Dr. Wyland. Would she able to perform her past work?" (AR 61-62). As discussed above, the VE responded no, and then provided two

alternative occupations which she could perform. Thus, when the ALJ and VE found Plaintiff was able to work as a collator operator and an inserting-machine operator, it was already part of the hypothetical that Plaintiff was illiterate but could speak quite well. Because the ALJ appropriately distinguished Plaintiff's specific speaking abilities from the DOT and asked the VE hypotheticals which took into consideration these abilities, the ALJ appropriately found that Plaintiff could perform the jobs as a collator operator and an inserting-machine operator, despite her illiteracy.

## VI. Conclusion

Judicial review of a decision to deny disability benefits is limited to determining whether the decision is based on substantial evidence reviewing the administrative record as a whole. If the record will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. If the evidence can reasonably support either affirming or reversing the ALJ's decision, the court may not substitute its judgment for the ALJ's. *Flaten*, 44 F.3d at 1457. It is the ALJ's responsibility to make findings of fact, drawing reasonable inferences from the record as a whole and to resolve conflicts in the evidence and differences of opinion.

Having reviewed the Administrative Record as a whole, and weighing the evidence that supports and detracts from the Commissioner's conclusion, the court finds that the ALJ's decision is supported by substantial evidence under 42 U.S.C. § 405(g), and that the ALJ applied the correct legal standard in reaching his decision. The ALJ's decision is fully supported by substantial evidence in the record, based on the proper legal standards, and articulates reasons that satisfy the requisite standards.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Reversal and/or Remand (#11) be **denied** and the Commissioner's Cross-Motion for Summary Judgment (#12) be **granted**.

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the

objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.,* 708 F.2d 452, 454 (9th Cir. 1983).

Dated this 18th day of November, 2011.

_____
C. W. HOFFMAN, JR.
UNITED STATES MAGISTRATE JUDGE